Adam Flake for the United States. If I may, I would like to reserve four minutes for rebuttal and I will keep track of my time. Please. Before I begin my argument, unfortunately, I need to point out a factual error that I made in my opening brief. I don't think it affects the Court's opinion, but in the interest of candor, I would like to point it out. In a footnote on page six, footnote three on page six, I made the mistake of saying the evidence of whether or not Mr. Williams turned off the ignition in his car was uncontested. I should not have said that it was uncontested. The defense did contest that, and that was an incorrect thing for me to say. At EOR 259, the defense did contest whether or not he turned off the ignition. So that was — I just wanted to point that out. Once again, we're not contesting the district court's factual findings, so I don't think it will affect the Court's disposition in this case, but I hope that I haven't created any undue confusion for the Court. Thank you. The first thing I would like to address is the waiver argument with regard to probable cause for the arrest itself. And as I'm sure the Court is aware, what happened here was a little unusual because the district court based its argument — that was not very heavily litigated by the parties, the issue of once Mr. Williams fled, whether or not the police had reasonable suspicion for the arrest. And the defense argues that we waived that claim by not briefing it more fully, by not pointing out the statutes upon which we think that the district court should have found that there was probable cause for the arrest. But I believe that we did raise it in our response to the motion to suppress, and more importantly, by reaching the issue, the district court put this court in a position to rule on that issue. So I do not believe it is waived. You're talking about where Mr. Williams ran from the police officers, and therefore you claim a violation of obstruction of delays under the local statute? Yes, Your Honor. And then that's the process that you use for probable cause to make the arrest? That's correct, Your Honor. And then, of course, once the officers executed the arrest for violating that statute, they found the drugs and the money in his pocket, giving them probable cause to search the vehicle. That's our chain of logic. Let me just make sure I understand the theory. I think I do. So the theory is the police have reason to talk to you, not probable cause, but just reason to talk to you, and you decide I'm not going to talk to you, the police. That becomes a crime under local law? It's not. I don't mean you. Thank you, Your Honor. You're off the hook. But, you know, the police walk up to somebody, and let's say they have found a suspicion, you know, whatever it is the police need to talk to somebody, not as a suspect necessarily, but just to get information. And the person says, you're a police, you're an officer in a uniform, I never talk to policemen. Sorry, I'm not going to say anything to you. That winds up being a crime? It's more narrow than that, Your Honor. It's not that the suspect is compelled to talk. It's just that the suspect is compelled to provide their name. The statute is very specific about that. It says other than the person's name, they're not required to provide any additional information to the police, but they are required. So by running away, they are committing a crime because they are not providing the name? Yes, Your Honor. Had the police asked them for his name? I don't know if they specifically, I don't think that that was the first question out of their mouth. No, I don't think there's anything in the record, but I think that they were. Wait, stop right there. So the police don't ask for the suspect's name, and he runs away, maybe anticipating he'll be asked for his name, maybe because he has an urgent appointment somewhere else, maybe because he just doesn't want to say anything to the police at all. So before the police actually ask him the question, what's your name, which I guess you're telling me by law he's required to answer, he runs away. Does that become an obstruction, an anticipatory obstruction, because we have to assume that somewhere along the way the police would ask him for his name? Your Honor, I think I may have misspoken when I didn't mean to leave the Court with the impression that the name was the only thing that the statute requires of a person. It does require to provide a name, but if I could just read it so that there's no confusion. Sure, sure. And this is, once again, NRS 171.123, and I am reading the third paragraph. I'm sorry, where are you reading from? Nevada revised statute 173.123. Okay, I am with you. Hold on a sec. I need these guys to read it. It's so small. Go ahead. So that has three, four subsections, right? Yes, and subsection three is the one that I'm referencing. Okay. The officer may detain the person pursuant to this section only to ascertain the person's identity and the suspicious circumstances surrounding the person's presence abroad. So I don't think that under the statute the officer is necessarily, you know, as the person gets ready to run, the officer is not required to say, hey, what's your name? And that makes it so that you have committed a crime. The officer, when they have reasonable suspicion, they're allowed to ask you your name. And they're allowed to determine the circumstances of your presence. Reasonable suspicion of what? Reasonable suspicion of what? Just that the — in the first section, under circumstances which reasonably indicate that the person has committed, is committed, is committing, or is about to commit a crime. That's what I'm asking you. In this case, what did they have reasonable suspicion to conclude that he was doing that was a crime? I think it was a number of things, Your Honor. The officers specifically identified drunken driving. They specifically identified loitering. The caller — the officers knew that the caller had specifically said that the person was a known drug dealer who did not live in the area, who was sleeping in their car. And so I think any of those things could serve as the suspicious circumstances. And I think also the notion of reasonable suspicion, I don't think that it has to necessarily be tied to a particular crime. Because if we look at cases about flight, you know, if you're in a suspicious neighborhood under suspicious circumstances, and you — not you — if a suspect is in a suspicious neighborhood under suspicious circumstances, they see the police coming and they run off, the policeman isn't necessarily going to be able to say, you know, you've obviously got a weapon, or you've obviously got drugs, or you obviously have child pornography on your phone, or anything else. They don't have — it's not the same as probable cause, where they have cause to believe that you committed an actual crime. It's just reasonable suspicion that you are engaged in criminal activity. Those are drunk driving — what else did you say? Drunk driving and loitering, and certainly drug dealing. Okay, so let me get back to my exploration of the statute. I mean, in light of the answer you gave just recently. So just to understand how the statute operates. If the police, let's say, are lost — I mean, they — I know that today they have GPSs and all that, but let's say the GPS isn't working, and they sort of stop the car, and somebody is walking down the street, and they say, excuse me, where's Main Street? And that person doesn't want to talk to them. That's not a crime, right? It's not, correct, Your Honor. Because the person they're approaching has — they have to have reasonable suspicion of a crime, and not just reasonable suspicion of a crime, reasonable suspicion that that person is involved in a crime. Correct. So seeing somebody come out of a liquor store, for example, that they don't think is the guy, but they just want to sort of find out what's inside the liquor store, that would not be a crime. They have to actually have some reasonable suspicion directed at this person. Yes, Your Honor. And at that point, you read Section 3, and again, I'm just trying to understand how the statute operates. They say something about they are entitled to detain. Okay? Now, when have they detained the person? I mean, do they have to say you're detained? I mean, at what point does this person's right to walk away or run away, for whatever reason, cease under State law? Or what is it, State statute, and specifically under NRS 171.123? Your Honor, I'm not exactly sure, but I would — and I'm sorry because I'm guessing, and I had not thought about this very specifically before argument. But I assume, I believe that it would take place at the point that the police made a show of authority and asked the person to do something, in this case, get out of your car. I see. I'm sorry. So I want you to do exactly that, what you're doing, which is related to this case. So just walk me through. So he's sitting in the car, sleeping. The police get the phone call. They drive up and box him in, right? Yes. Has he been detained at that point? Your Honor, the district court actually found in this case that the police didn't detain him until he submitted to their attempt to detain him. In other words — The district court was wrong on that, right? Well, the officers attempted to detain him, certainly, before then. But they obviously were not successful in doing so since he ran off. I thought detention as a matter of law is a question — is when your movements are sufficiently impaired that you're not — you don't feel you're free to go, even though you might theoretically be able to leave. I mean, the fact that he gets away doesn't mean he's not detained. Well, I think, Your Honor, the police attempted — We apply this test in lots of situations when police question suspects. We ask, you know, is the person detained, right? Yes, Your Honor, but I — I mean, I think that once they — Let me ask you, what is the government's — what is the government's position? When was he detained at this point? Your Honor, I didn't appeal the district court's determination that he was not detained until after he had fled. I would think that he — at the point he couldn't drive his car — But you have appealed the suppression order. Yes, Your Honor. And it seems to me to that extent you've appealed everything that supports it. Yes, Your Honor. I believe that he would be detained at the point he could no longer drive his car, which was very — So in your view, once they box him in, his movements are sufficiently restricted that he's detained, and therefore NRS 171.123.3 kicks in? Yes, Your Honor. Okay. I just want to understand your position. Okay. So the fact that he can still get out of the car and flee and all of that doesn't change, in fact, in your view, that he was, in fact, detained? No, Your Honor. And once detained and he flees, that then becomes a crime of the state law, because having been detained, he has stuck around to be asked the questions that the police are illegitimately entitled to ask. Yes, Your Honor. I'm just trying to understand your chain of reasoning. Yes, Your Honor. Actually, if I could have one moment, Your Honor. Okay. And I realize that I'm — I'm sorry. I didn't mean to put words in your mouth. I was just articulating what I think — what I understood you to be arguing, so let me try to understand your position. I — I don't think that I — I'm looking at ER-5, which is the district court's order. I'm looking under subheading 1, where the district court says, First, as a preliminary matter, the court finds that William's seizure was not complete until he was physically apprehended after he fled, finding that the defendant who momentarily spoke to the police and then fled was not seized until he was physically apprehended. I don't — I don't think that I disagree with the district court's finding there. I don't think that he was detained until after the police — until after he ran from the police. I think the police tried to detain him, and that was what triggered the operation of the statute. But as far as when the — when the detention actually took place, I think it was once he fell down and submitted to the police. Well, all right. So if he's not detained, how does that work with NRS 171.123, which hinges the crime isn't triggered unless he is detained? So just running away from the police, if you see the police coming and you say, God, you know, I sure don't want to deal with the police, so they're coming down the block and you start running away, there's no violation here, even though the police might have a legitimate reason to talk to you, right? Your Honor, I think — I'm sorry. I think I misunderstood your question. I think I didn't quite understand what you're asking. What I just asked? Yes. Well, look at NRS 123. Okay. Okay. As you explained it to me, and as I now read a lot of your explanation, is your obligation under state law to stick around and answer police questions doesn't arise until you're detained. I disagree, Your Honor. I think it arises once the police try to detain you, because if the police try to detain you and if all you have to do is get away to keep from violating the statute, that doesn't make any sense to me. And I think that the statute needs to be read in conjunction with NRS 199-280. But then we need to have a different conversation, and the conversation is at what point have the police done enough to have it be an attempt to detain? I think that at the point that they – I mean, if you saw the distinction between detaining and attempting to detain. I think that at the point that they came behind him and turned on their lights and ordered him to get out of the vehicle, at that point they're certainly attempting to detain him. They're asking him to, you know, stay there. I don't think they specifically asked him to identify himself, but they're making commands of him. They're attempting to get him to – Does Miranda kick in at that point? Miranda does kick in, and once again, the court in Highbell – Is that true? So when you get stopped on the road and the police, you know, for alleged speeding or running a red light or something like that, police pull up behind you with a red light, and a policeman walks up to the window and says, Hey, buddy, do you know how fast you were going? And you say, whatever answer you give, he has to give you Miranda warnings because you've been detained? I apologize, Your Honor. I shouldn't have said Miranda. What I meant to say was – Well, I asked about Miranda, so you really had no choice but to answer in terms of Miranda. I mean, you could have raised MAP or Mallory or something, but I happen to be focusing on Miranda, so you had to give me an answer that had Miranda in the answer. I apologize, Your Honor. So let's run through this once again. You said once they boxed him in, they have attempted to detain him. And so I said, okay, at that point, does Miranda kick in? I was trying to test the proposition that he is detained by invoking various constitutional rights that kick in once you're – let's say you've been seized, right? So I just threw out Miranda because it was an obvious one. And you said, you know, like a fish, you bit the hook. You said yes. So now that you – if you have a chance to spit out the hook, what would you say now? The point that I should have made, Your Honor, is – Well, no, you answer my question. You can make whatever point you want in the next. I mean, I'm still asking the question. Once they box him in, does Miranda kick in? Yes, Your Honor. He is obligated to provide his name, and the Highbell case says that – Do they have to give Miranda warnings before he provides his name, before they ask him any questions? I mean, if you say he's detained, right? I think it's – I don't think that Miranda kicks in until he is arrested. I think that on reasonable suspicion, the court can – the officers can at least get his name from him. I see.  Yes, Your Honor. I think that – Yes, we have no bananas. What's that? Yes, we have no bananas. Yes, Miranda doesn't kick in. Your Honor, I – No, Miranda. I'm going to apologize. I don't want to misspeak, and I'm afraid that I just have not thought about this particular issue, and I would hate to – I would hate to mislead the court. If the court would like me to provide some additional briefing on this, I'd be happy to do this, and I apologize that I hadn't thought about this exact issue before. Does the U.S. Attorney's Office in Nevada provide moot courts for their – It does, Your Honor, and this did not come up during the moot court either, unfortunately. I'd be happy to – You need better moot courters. You can't have all of your buddies on the moot court. You have to find somebody who is not your friend. Maybe get some defense lawyers to moot you. Anyway, why don't we hear from the government? I'm sorry, not from the government. This is the government from defendants. Good morning. May it please the Court, Amy Cleary on behalf of Tony Williams. I would like to address some of the court's questions. Sure. The officers who stopped Mr. Williams did not ask him for anything. The officers who blocked in Tony Williams did so on a tip that was very bare bones. Well, I don't know what you mean by bare bones. They said, you know, there's a guy sleeping in a car, and I know him to be a drug dealer, and, you know, I'm worried about – I mean, implicit was I'm sort of worried about the fact there's a drug dealer parked long-term outside sleeping in a car. I mean, that's how they're bare bones. I mean, they get over there, they find the vehicle, and they find the guy sleeping in it. With respect to the Court, even those facts that you had just repeated aren't actually what was considered in the tip. The tip was that the person in the car, they did not identify Mr. Williams, was known to be a drug dealer. Not that the caller knew. Did I say that it was Mr. Williams? No. What you suggested, Your Honor, if I heard correctly, was that the caller suggested he knew the person in the car to be a drug dealer. I don't think I said that either. Okay. He's known to be a drug dealer. Okay. And that's all that he said. He didn't say that he knew him to be a drug dealer. He didn't know when. He didn't give any time or temporal references to that. So? So when the officers came up upon Mr. Williams, and they suspected that it was perhaps a loitering or a drunk driving. Well, I'm sure. What's the point of that? You don't think they had enough foreign suspicion to talk to him? I think that based on that information, that they had enough that they could question him. They could investigate him. Okay. Not do so by blocking him in and doing so in a way where they come up on either side of the car. I'm sorry. I'm not aware that methods are. I mean, they either have authority to talk to him or they don't have authority to talk to him. I mean, let's say that he had been standing on a street corner, and they walk. You know, it's exactly the same situation, but by the time they walk up to him, he's standing outside the car. Certainly. They could frisk him, right? If that frisk was reasonably related to what their suspicions were. Terry is not a free-for-all. Terry has a scope. They get a tip just like, I mean, I'm going to say if. We have the facts we have, and I've just changed one thing. Instead of having him sitting in the car, he is now outside the car, and they walk up to him. So they are, you know, this much body distance to him. They have been told he is known to be a drug dealer. They're entitled to frisk him, right? No. No? They're entitled to, if they believe that, cause to believe that he was armed and dangerous, they don't have that information. You can do a Terry frisk if you have that information. They lack that. You think just being told that somebody is a possible drug dealer is not enough for a Terry frisk? Not in this circumstance. Not with any temporal references. Not with any claims that he saw him do any drug dealings. Not when the officers didn't see anyone near the car. If they had evidence that they saw him drug dealing, they'd have probable cause. They wouldn't have to frisk him. They could just arrest him, right? If somebody called in and said, you know, this guy and this is his description, I saw him engaging in a drug transaction, then they'd have probable cause. The officers, though, had an obligation. Anyway, I have your answer. I think you're wrong about that, about the Terry. I think if they have cause to talk to him, they're entitled to frisk him. But if you disagree, I suppose you disagree about it. Part of my disagreement, Your Honor, is because there was no indicia of reliability with this particular tip. There was no predictable factors. So when the officers came upon him. No particular factors. The man says it's happening. He says where he is. He gives his name. He gives his phone number. I mean, this is not something where somebody says, here, I'll get my book out and I'll read what I'm supposed to say. This is energized people who are reporting to the police what they feel is a threat in some respect. It seemed to me in reading the cases that this was a pretty strong tip, even though he didn't see a crime being committed. He was worried about a crime, obviously, because he believed this person was a drug dealer. Do you think the tip really was that bad? I do, Your Honor. I do. The fact that he could perhaps look out and see something and report what he's seeing contemporaneously is one thing. Florida v. J.L. requires that the tipster be able to, if you're going to have some indicia of reliability, to be able to forecast that there's some sort of criminal activity going forward. You have to give some predictive information, not something that an average jail on the street could call. Okay. They believed, this person believes, apparently, he's a drug dealer, he's in a high crime rate, and it's out in front of his house. There wasn't sufficient information that there was a high crime rate. The information that was given by the officers was the run of the mill, we have high crime in this area. There was no statistics. There was no information. And the type of high crime. You mean to make a good tip he has to go out and do some statistical checks, or he believes it's a high crime rate, high crime area, as does the police officer? And I was only speaking with regard to the police officer, Your Honor, when the police officer testified. The police officer who spoke to the high crime area also said, and a whole other lot of stuff, that doesn't make it a high crime area. That doesn't provide any information. The police officer should have said when they phoned in the police officer, you're not giving me enough information. We're not going to send in a police officer to see you. No, Your Honor. And perhaps I'm misunderstanding your question. I'm referring to when the officers were tested as to why they thought that this satisfied reasonable suspicion. They didn't provide any information to the district court to satisfy a belief. Oh, I thought you were saying the tip was. No, Your Honor. Your Honor, you were on an argument at the time I interjected how poor this tip was. And I just didn't see that as a poor tip. I would think the police would have to check if a citizen made that type of a telephone call to the police department. And I don't disagree that they had every right to investigate that. Okay. I disagree with what that allowed them to do as far as their investigative techniques. I don't think that there was reasonable suspicion to believe that he was. Okay. So they come along and they are, of course, they have to protect themselves. We have a lot of police officers that get shot just walking up, stopping somebody in a car. So they're aware there's a dangerous situation. A dangerous situation has been reported. They think this may be a person who is DUI. They don't want him to escape, so they put their car behind the car so he can't. Anything wrong with that type of investigation? There is. You mean he should have pulled over to the side so the person could pull out. Is that right? Well, when the officers came upon him, they had no information. No, no, wait a minute. My question is, by your theory, when the police officers came to the scene, they should not have parked behind him. They should have parked away from him so he had an opportunity to pull out if he chose to do so. That's your argument? That's my argument, Your Honor. And the police were wrong in doing that, even though they said this person may be a DUI and might try to escape and interfere with the safety of the public. They are wrong by cutting that possibility off, right? They were wrong to block him in like that because they had no information. Okay, I have your argument. Okay. Let's say we disagree with you on that score, which is entirely possible. If you disagree with me on that score, Your Honor, the district court found that the seizure in this case was not complete until Mr. Williams fled and the officers arrested him. The district court correctly found that there were no grounds to arrest Mr. Williams. So when they did their Terry Frist pat-down of him when they stopped him, that's all that they were entitled to do. When they arrested him without probable cause to do so... I'm sorry. I thought you said they were not entitled to frisk him. I was assuming you weren't agreeing with me on reasonable suspicion, Your Honor. Oh, okay. I understand. What you're saying is they frisked him based upon a Terry stop and didn't find anything that was contraband. Exactly. But then they arrested him for what we don't know. Correct. And then they searched him as opposed to frisking. When they frisked him, he didn't find any contraband. Absolutely. So by finding contraband after arresting him without probable cause for any crime, that's the heart of the argument. Exactly. What about the running away part? I think the running away, I think fleeing contributes to finding a reasonable suspicion. No, no. I mean, but the government argues that that was a violation of NRS 171.123. Well, I disagree. If that were the case, the hypotheticals that Your Honor posed to the government counsel during their argument would basically throw out the Fourth Amendment entirely. It would allow... Oh, not entirely. A large part. Not even a large part. I mean, look, we've gotten past the point, you know, they have a reason to talk to him, right? Yes. And state law says when the police have a reason to talk to you and they detain you, you have to answer certain questions. Yes. You didn't challenge the constitutionality of that law. No, because they didn't ask him any questions. They never once asked him a question. I didn't say they asked him any questions. They're entitled to ask him questions. Well, this was not a statute that we would have challenged the constitutionality of because it wasn't raised below. I'm just saying, I'm sorry? It wasn't raised below. I see. The first time that the government raised this argument was in its opening brief. So this wasn't a particular statute that either the defense or the district court would have considered the constitutionality of, and that was the heart of our waiver argument with regard to this. Even so, in High Bell, when this court considered or the Supreme Court considered this statute, the court was explicit that the Terry stop was, in the first instance, not at issue. Here it was at issue. So the fact that if reasonable suspicion allowed them to finally stop him at the point that he surrendered, nothing in the statute had been violated because they hadn't fully completed their seizure of him or their detention of him as the district court found. You're saying his obligation to give his name would have been when he was detained, and then he would have violated the statute, but he didn't. Correct. For those reasons, Your Honors, we ask that you affirm the district court's order suppressing the evidence in this case. Thank you. Okay. Thank you. Your Honor, this time, would you like a minute for rebuttal? If I may, Your Honor, I may already be in a hole and just need to stop digging, but I did take a minute to research the question that Your Honor asked me during my initial argument, and I found a case which I apologize I didn't cite it. Once again, I didn't think of it. I just simply didn't think about this issue, but I'd be happy to cite it to the Court with the Court's permission. Sure. Go on. It's United States v. Butler, 249 F. 3rd 1094. It says the case books are full of scenarios in which a person is detained by law enforcement, an officer is not free to go but is not in custody for Miranda purposes, a traffic stop is not custody, a Terry stop in Frisk is not custody. And I apologize that I hadn't thought of that angle, and I did not know the answer off the top of my head. So what is the implication of that? The implication is when the officers attempted to perform a Terry stop on Mr. Williams, he was not in custody. Miranda did not attach at that point. Under the statute, they were entitled to stop him, ask him for his name without violating Miranda. What about the fact that NRS 171.123 wasn't raised below? Your Honor, once again, we did say in our brief that once he fled from the officers, we had probable cause to arrest him for flight. We didn't cite the statute, but this was not an issue that was heavily litigated in the district court because the defendant did not raise anything about that. The district court surprised us a little bit when the district court relied on that statute in its ruling because we had not, the parties had not talked about it. And so for the district court to bring it up in his ruling was a surprise to both parties. That's why we weren't, we didn't litigate it more fully. Okay. Thank you. Case, Justice Hager will stand to make.
judges: Wallace, Kozinski, Whaley